IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Mark Harris, | ) | CIVIL ACTION NO. 2:25-cv-3834-DCN-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| The Boeing Company and Nelson Akwari, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## INTRODUCTION

1. Plaintiff brings this action pursuant to 42 U.S.C. §1981 (hereinafter "Section 1981"), based on race discrimination and retaliation, and asks the Court to exercise its supplemental jurisdiction over his additional state law causes of action based on: (a) breach of contract, (b) breach of contract accompanied by a fraudulent act, (c) failure to pay wages due as required by the South Carolina Payment of Wages Act, §§ 41-10-10 *et seq*. ("SCPWA"), and (d) the Defendants' defamatory statements and conduct.

## PARTIES

2. The Plaintiff, Mark Harris (hereinafter "Harris" or "Plaintiff"), is a Caucasian male citizen and resident of Berkeley County, South Carolina. Plaintiff worked for Defendant Boeing in Orangeburg County, South Carolina.

3. Defendant, The Boeing Company (hereinafter "Boeing" or "Defendant"), is a corporation, organized and existing under the laws of a state other than South Carolina, with its principal place of business in a state other than South Carolina. Upon information and belief, Defendant Boeing has its principal place of business in the Commonwealth of Virginia. Defendant

1

transacts substantial business in South Carolina. Defendants are employers in an industry affecting commerce, who employ more than 500 employees. At all times relevant, Defendant employed Plaintiff in South Carolina. The wrongful actions of which the Plaintiff complains occurred in South Carolina.

4.     Defendant Nelson Akwari (hereinafter "Akwari" or "Defendant"), an African American, is a manager of Defendant Boeing who, upon information and belief, is a resident of Dorchester County, South Carolina. Akwari undertook the actions Plaintiff complains of herein in South Carolina.

## JURISDICTION, VENUE, AND TRIAL BY JURY

5.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(4), 42 U.S.C. § 1981, and 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391, because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Plaintiff requests a trial by jury for all issues which may be submitted to a jury.

## STATEMENT OF FACTS

6.     Mark Harris, the Plaintiff, is a Caucasian male, partially disabled veteran of the United States Air Force.

7.     Harris was employed by GKN Aerospace (hereinafter "GKN") as the Site Director at that company's Orangeburg facility from April of 2022 until the sale of that location to Defendant Boeing in June of 2024. *See* https://www.gknaerospace.com/news-insights/news/gkn-aerospace-completes-sale-of-orangeburg-facility-to-boeing/. After the sale, Plaintiff's position title changed to Fabrication South Carolina Site Leader, but little else was different in the day-to-day operation of the facility.

8. Plaintiff had an exemplary record, both with GKN and Boeing, as evidenced by his consistent and numerous positive performance reviews and the successes of the site itself.

9. After the sale to Boeing, Plaintiff reported directly to Defendant Akwari, Boeing's Director of Fabrication South Carolina. Plaintiff was consistently praised by Akwari and other superiors who encouraged him to continue his excellent work.

10. In November of 2024, Plaintiff was inadvertently copied on an email between Akwari and two upper-level Boeing managers. The email praised Plaintiff and was intended to begin the process of promoting Plaintiff to a Director level position within Boeing.

11. The higher-level managers agreed with the recommendation of Akwari. In December of 2024, Plaintiff was offered a promotion to a Boeing Director with more responsibilities and a significant additional salary and bonus structure. The promotion was subject only to a background check. Plaintiff had recently held a Top Secret clearance within the US Government, so the background check was just a formality.

12. Around that time, a former GKN employee who was promoted to a Human Resources role with Boeing, made a complaint about Plaintiff. The employee, an African American female named Vanessa Henderson (hereinafter "Henderson"), alleged that Plaintiff and another manager, Alex Cohen (hereinafter "Cohen"), acted in a discriminatory manner and thereby harmed her. The complaint centered on the Plaintiff's alleged failure to provide the complainant with a private office.

13. The complaint further alleged, among other things, that Plaintiff was discriminating against Henderson because of her race and that the management's offices at the Orangeburg facility were termed the "white house," due to its Caucasian makeup.

14. Plaintiff had managed thousands of individuals over the past twenty-five years of

3

his career and had never been accused of any type of discrimination. He was shocked by the allegations but knew them to be untrue. He welcomed an investigation into the matter to clear his name.

15. Boeing began an investigation and assigned a Senior Corporate Investigator, Shiobhan Lagasca (hereinafter "Lagasca"), an African American female, to interview Plaintiff regarding the complaint. The interview occurred on January 21, 2025.

16. The interview, which took place over a phone call, was hostile. Lagasca was accusatory and rude to Plaintiff during the entire conversation. She questioned the ethnicity of the leadership team, and implied that while he was with GKN Aerospace, Plaintiff should have hired senior managers on the site based on their ethnicity to better represent the site's demographics. Lagasca specifically stated that the makeup of the Core Leadership Team at the site was "too white." Plaintiff explained that he had not assembled the team at GKN, only arriving himself in 2022. He indicated, however, that he had hired an African-American for a senior position when the opportunity arose, but the investigator responded that "he did not appear to be" African-American.

17. Afterwards, Lagasca provided a written summary of the interview which painted Plaintiff as a racist and did not reflect the content of the call. Plaintiff made corrections to the summary and submitted them to Lagasca via email on January 23, 2025. Thereafter, he made an Ethics complaint to Brad Houghton (hereinafter "Houghton"), Boeing's Site Compliance and Ethics Officer, about the discrimination he had encountered and the manner in which he was treated during the interview.

18. Throughout the investigation, Plaintiff was consistently reassured by Akwari that he was doing a good job and that the promotion was imminent. Plaintiff thus remained confident

that he would be exonerated of the baseless accusations and receive the offered promotion.

19. On February 4, 2025, after discussing the situation further with Houghton, Plaintiff emailed Lagasca to inquire about the investigation, and he was told that it was in "final review."

20. The next morning, Akwari visited Plaintiff at the Orangeburg site. In a private meeting with Plaintiff and Randy Sheppard (hereinafter "Sheppard"), Senior Director of Human Resources for Boeing Commercial Airplanes, Akwari told Plaintiff that the promotion was being rescinded and that he was terminated effective immediately "because of things found in the investigation."

21. Plaintiff had not been provided any result of the investigation, so he asked if either Akwari or the HR professional in attendance had reviewed the results. Akwari stated that he had not, and Sheppard would only say that he was aware of the investigation. According to Akwari, the reason for both Plaintiff's non-promotion and his termination was unethical behavior on the part of the Plaintiff that was uncovered during this investigation.

22. Defendants presented Plaintiff with a severance package, which required Plaintiff to waive certain rights. Plaintiff sought legal advice regarding the severance agreement. For the most part, Plaintiff was looking for clarification on the reason or reasons for his termination.

23. Defendant Boeing provided no such clarification. In fact, Boeing gave multiple conflicting reasons for Plaintiff's termination. However, Boeing confirmed unequivocally that the investigation results determined that Plaintiff did not discriminate against the complainant, Henderson, or any other person in his role with Boeing.

24. Nonetheless, on the same day that Plaintiff was terminated, Defendant Akwari called a meeting of the site leadership team to relay the termination of Plaintiff and the reasons for the same to other Boeing employees. In this meeting, Akwari clearly stated that Plaintiff was

"terminated for an ethics violation." This statement was false. It was published maliciously and repeated maliciously to unprivileged employees, with, at best, reckless disregard as to its truth or falsity, and far exceeded any qualified privilege. Moreover, it clearly insinuated that Plaintiff was unfit in his business or profession and potentially had committed a crime of moral turpitude—classic defamation *per se*.

25. At the same time, Henderson, with the knowledge of Boeing management, began bragging to Boeing employees at the Orangeburg facility, and spread to the Charleston site, that her complaint about her "racist" boss was the reason he was terminated. These rumors, statements, and innuendos have continued, unchecked by Defendant Boeing's management, and continue to impugn the Plaintiff's reputation.

26. Plaintiff has been unable to attain replacement employment and Boeing has blacklisted Plaintiff as a non-rehire.

27. Defendant Boeing can provide no legitimate, nondiscriminatory reason for either Plaintiff's non-promotion or his termination.

28. Like many other large employers, Boeing increased its DEI initiatives following the death of George Floyd in May 2020 — pledging to increase overall black employment by 20% by 2025. *See, e.g.*, Eric Johnson, *Boeing aims to increase Black employees by 20%, CEO says in memo*, Reuters, Aug. 28, 2020, https://www.reuters.com/article/business/boeing-aims-to-increase-black-employees-by-20-ceo-says-in-memo-idUSKBN25O24A/ (last visited May 6, 2025). As a result, by 2023, Boeing had in fact increased African-American employment by 17% from 2020. *See* The Boeing Company, *2024 Sustainability and Social Impact Report* 24, https://www.boeing.com/content/dam/boeing/boeingdotcom/sustainability/pdf/2024-boeing-sustainability-socialImpact-report.pdf (last visited May 6, 2025). Boeing was repeatedly accused

of using racial quotas for both hiring and promotion during this time. Further, reports indicate that executive compensation at Boeing was no longer tied to only performance and safety measures—but also to DEI and ESG benchmarks. *See, e.g.*, Caden Pearson, *Boeing Dismantles DEI Team, Chief Resigns*, NTD News, Nov. 2, 2024, https://www.ntd.com/boeing-dismantles-dei-team-chief-resigns_1026652.html (last visited May 6, 2025) ("[Boeing's report] noted that Boeing had incorporated DEI targets into its 2022 executive compensation metrics, in addition to its traditional focus on safety and quality benchmarks.")

29. Although Boeing officially dismantled its DEI Department in November 2024, caving to outside pressure, it still retains most of the initiatives and policies instituted during that time, and the majority of the DEI Department was absorbed by HR—Henderson's department—where the DEI culture continues. *See, e.g.*, Bloomberg, *Boeing Dismantles DEI Team as Pressure Builds on New CEO*, Nov. 1, 2024, https://news.bloomberglaw.com/daily-labor-report/boeing-dismantles-diversity-team-as-pressure-builds-on-new-ceo (last visited May 6, 2025).  Boeing still touts "Inclusion Ambassadors" on its website "who champion an inclusive culture where every teammate can perform at their best" and highlights various "business resource groups" like BAPA (Boeing Asian and Pacific Association), BBEA (Boeing Black Employees Association), BE-IN (Boeing Employees Indigenous Network), and BEPA (Boeing Employees Pride Alliance), to "provide space for Boeing teammates to build inclusive communities." *See* The Boeing Company, People & Culture, https://www.boeing.com/sustainability/people-and-culture (last visited May 6, 2025).

30. The Boeing Orangeburg facility mainly employs African American blue-collar workers.  Based on the proliferation of Boeing's DEI culture, the pretextual investigation, the repeated notation of the Orangeburg management team as members of the "White House", and

7

Boeing's belief, expressed through Lagasca, that the senior management team was "too white," Boeing sought to replace Caucasian managers with African Americans. Henderson has since been telling other Boeing employees, "One down, two to go"—referring to Plaintiff's termination and two other Caucasian members of the senior management team who are supposedly next.

31.     Given the foregoing, it is certain Plaintiff was scape-goated and removed from a position in which he was supremely successful for one or more unlawful reasons: (1) because he is a Caucasian; and (2) in retaliation for his making an ethics complaint about the discriminatory treatment he received during the sham "investigation."

32.     Defendants have further retaliated against Plaintiff for his ethics complaint and post-employment complaints of discrimination by failing to take any action to prevent the continuing defamatory statements and actions of their employees and by failing to pay Plaintiff a bonus Plaintiff already earned for his work during the first six months of 2024 with GKN.

## PLAINTIFF'S EARNED BONUS

33.     At the time of the sale of the GKN Orangeburg facility to Boeing, every GKN employee at the site had earned a bonus based on their individual time and effort in advancing the goals of the site. These bonuses were not discretionary and were to compensate the GKN employees for their work during the first six months of 2024.

34.     These bonuses were explicitly discussed and agreed upon during the sale of the business. As a part of the purchase agreement, Boeing received a reserve or stipend for the bonuses that are owed to the former GKN employees.

35.     In January 2025, Boeing undertook steps to complete the bonus payments for each former GKN employee, including requiring Cohen to gather the W-2 information for each former GKN/now Boeing employee to enable the calculation of each individual bonus amount.

36. The bonus payments were to be remitted by Boeing on February 27, 2025 – twenty-two days after Plaintiff's termination.

37. Plaintiff's bonus owed exceeds $39,000.00.

38. Boeing has not paid this earned bonus and, upon information and belief, does not intend to do so. They are not only withholding Plaintiff's bonus but every former GKN employee on the site. Defendant Boeing is avoiding payments of more than $500,000.00 in earned compensation to its employees. This compensation is owed as wages, and Boeing is willfully and knowingly refusing to pay.

39. Plaintiff's unlawful termination additionally deprived him of the retention bonus he should have received had he not been unlawfully terminated prior to the date of its accrual—approximately $27,000.00.

## FOR A FIRST CAUSE OF ACTION
### (Race Discrimination in Violation of 42 U.S.C. § 1981)

40. Plaintiff reavers all preceding and subsequent paragraphs of this Complaint as if set forth fully herein.

41. By acts and practices alleged above, and by other and related acts and practices, Defendant has willfully deprived Plaintiff of equal employment opportunities guaranteed by law by discriminating against him with respect to the terms, conditions and privileges of his employment, including the wrongful investigation, non-promotion, and termination of the Plaintiff on account of his race and by depriving him of employment opportunities; all in violation of 42 U.S.C. §1981. But for Plaintiff's race, Defendants would not have unlawfully interfered with and injured his contractual interests.

42. The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of 42 U.S.C. §1981)

43. Plaintiff reavers all preceding and subsequent paragraphs of this Complaint as if set forth fully herein.

44. By the acts and practices alleged above, and by other related acts and practices, Defendant has willfully retaliated against Plaintiff by taking adverse and harmful actions against him, including non-promotion and termination, for his lawful and protected reports of harassment and discrimination, after learning he had made an ethics complaint regarding Boeing's pretextual and discriminatory investigation and the manner in which it was carried out. Defendants further retaliated against Plaintiff for his pre- and post-employment complaints of discrimination, by failing to pay him his earned bonus and failing to take any action to prevent the defamatory words and conduct of their employees, all in violation of 42 U.S.C. §1981.

45. The actions and omissions of Defendants were willful, malicious and in bad faith and proximately caused actual and punitive damages to Plaintiff.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Contract)

46. Plaintiff reavers all preceding and subsequent paragraphs of this Complaint as if set forth fully herein.

47. Defendants had a contractual obligation to pay Plaintiff his earned bonus for his work during the first six months of 2024 with GKN.

48. Defendants breached that contract by refusing to pay him the bonus.

49. Defendants' breach has proximately caused Plaintiff actual damages.

## FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract Accompanied by a Fraudulent Act)

50. Plaintiff reavers all preceding and subsequent paragraphs of this Complaint as if set

forth fully herein.

51. Defendants had a contractual obligation to pay Plaintiff his earned bonus for his work during the first six months of 2024 with GKN.

52. Defendants breached that contract with the fraudulent intent of depriving Plaintiff of his earned compensation.

53. That breach was further accompanied by the fraudulent act of falsely claiming the bonus was discretionary. Additional fraudulent acts include, but are not limited to: Defendants' pretextual bases for Plaintiff's termination, when he was really terminated on account of his race; falsely publishing to Boeing's employees that Plaintiff was terminated for ethics violations; requiring Plaintiff to announce to the entire site that they would receive their earned bonuses for the first six months of 2024, when Defendants did not intend to or were at least reckless as to their commitment to follow through.

54. As a direct and proximate result, Plaintiff has suffered damages in an amount to be determined at trial. Plaintiff is entitled to that amount plus punitive damages.

## FOR A FIFTH CAUSE OF ACTION
**(Violations of the South Carolina Payment of Wages Act)**

55. Plaintiff reavers all preceding and subsequent paragraphs of this Complaint as if set forth fully herein.

56. Defendants are employers as defined by South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10(1), and the authorities interpreting that Act, including, but not limited to, *Dumas v. InfoSafe Corp.*, 320 S.C. 188, 463 S.E.2d 641 (Ct. App. 1995) which imposes individual liability on agents or officers of corporations who permit their corporations to violate the South Carolina Payment of Wages Act.

57. The bonus payment Plaintiff is owed for his work during the first 6 months of 2024,

pursuant to his employment contract, constitutes wages as that term is defined by the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10(2).

58. Boeing contractually assumed the obligation to pay Plaintiff his bonus as part of its purchase of the GKN site.

59. By virtue of the breach of Plaintiff's afore-referenced employment contract and their failure to pay money to the Plaintiff that he is due as wages under the terms of his employment contract, Defendants have willfully, wrongfully, and intentionally withheld wages due to Plaintiff in violation of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 *et seq*.

60. As a consequent and proximate result of Defendants' willful and intentional withholding of the wages owed to Plaintiff, Plaintiff is entitled to damages in an amount equal to three times the amount that Defendants owe him as unpaid wages, in addition to costs and reasonable attorney's fees pursuant to S.C. Code Ann. § 41-10-80(C).

## FOR A SIXTH CAUSE OF ACTION
**(Defamation)**

61. Plaintiff reavers all preceding and subsequent paragraphs of this Complaint as if asset forth fully herein.

62. The Defendants have made false and defamatory statements about Plaintiff, including unprivileged, false statements about Plaintiff's unfitness in his business or profession and statements that Plaintiff committed a crime of moral turpitude, which is defamation *per se*.

63. Defendants Akwari, Henderson, and others employed by the Defendant Boeing falsely told Plaintiff's former co-workers and other third parties that he was terminated for what was discovered during the investigation and for ethics violations. They maliciously spread those falsehoods as if they were facts, to third parties, both inside and outside of Boeing's employment, far exceeding any qualified privilege. Immediately following Plaintiff's termination, Defendant

Akwari pulled the site leadership team—including Brian Roush, David Hallman, John Adams, Kevin Barker, Paul Frodyma, and Alex Cohen —into a meeting and told them, falsely, that Plaintiff was terminated because of the results of an ethics investigation. In subsequent meetings, which contained not only leadership but also hourly employees, it has been repeated that Plaintiff was terminated for ethics violations. Vanessa Henderson has told numerous employees at the site that Plaintiff was terminated for racism and that she "got him fired for racism." These rumors and falsehoods have spread throughout the site and beyond, to nonprivileged employees and other third parties, with Boeing's knowledge, unchecked by its senior management.

64. Additionally, the unlawful and baseless termination of Plaintiff, immediately following the pretextual "investigation," clearly insinuates unfitness in his business or profession and commission of a crime of moral turpitude, and itself constitutes defamation *per se*.

65. The Defendants knowingly—and without privilege—published false statements about Plaintiff to third parties. Those false statements were unnecessarily published by Akwari, Henderson, and numerous other Boeing employees to third parties, and far exceeded any qualified privilege.

66. Defendants did so recklessly, willfully, intentionally, in bad faith, and with implied and/or actual malice.

67. As a proximate result, Plaintiff has suffered both special and general damages, and is additionally entitled to punitive damages, in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment against the Defendant, as follows:

1. For all relief available under Section 1981, including back pay, front pay,

compensatory damages, punitive damages, costs, and attorney's fees;

2. For all relief available under the SCWPA, including treble damages, costs and attorney's fees;

3. For actual, nominal, exemplary, consequential, general, special and punitive damages on Plaintiff's other state law causes of action;

4. For the Plaintiff's costs and a reasonable attorney's fees, pursuant to all applicable provisions of law, and for such other and further relief as the Court deems proper, just and equitable.

GIBBS & HOLMES

s/Tim O. Lewis
Allan R. Holmes (Fed ID#1925)
A. Riley Holmes, Jr. (Fed ID#11115)
Timothy O. Lewis (Fed ID#9864)
171 Church Street, Suite 110
Post Office Box 938
Charleston, S.C. 29402
(843) 722-0033

ATTORNEYS FOR THE PLAINTIFF

Charleston, South Carolina

May 6, 2025